## Polčino's Estate

*Alphonso Santangelo,* for administrator.
*Harry J. Alker, Jr.,* for register of wills.
*Paul P. Wisler,* for Commonwealth.

HOLLAND, P. J., December 30, 1943.—The decedent died intestate, unmarried, and without issue. His next of kin at the time of his death were nieces and nephews, and grandnieces and grandnephews, all of whom were nationals of the Kingdom of Italy and residents thereof. The accountant was Carmine Vignola, the then Consul of Italy, stationed at Wilmington, Del. He was also authorized by the laws of Italy and the treaties between Italy and the United States of America to receive on behalf of the said nationals of Italy, the beneficiaries of the estate, the distributive shares due them. The account of the administrator was confirmed nisi December 12, 1938, and confirmed absolutely as of course December 22, 1938.

There were certain assets in this county of which the administrator possessed himself and administered the same. All inheritance tax has been paid upon these assets. Subsequently, it was discovered that there was on deposit in a bank known as the Casse di Risparmio Postali, in Rome, Italy, to the credit of the decedent, 340,410.35 lire which, at the value at the time of the filing of the supplemental inventory, September 17, 1938, of $0.0526 per lire, amounted in United States money to $17,905.58. This money never came into the possession of the administrator, nor could he obtain

possession, as the Italian Government had, by appropriate legislation, put a ban on the exportation of money from Italy. On the other hand, the beneficiaries resident in Italy, according to the laws of Italy, could not obtain their share of the funds except upon the decree of distribution of this court. Accordingly, the administrator charged himself in his account with the amount of this money for the purpose of obtaining the decree of this court distributing the same to the distributees in Italy.

In the adjudication there was awarded to the Commonwealth of Pennsylvania $1,566.21 as the transfer inheritance tax due the Commonwealth upon this particular deposit. The accountant, being unable to have the money brought to this country and exchanged into United States dollars and thus pay the distributees in Montgomery County the amount due them, did all that he was able to do, which was to obtain certificates of deposit or deposit books of the Italian bank, showing transfer to the credit of the respective distributees of the amounts which were awarded them in the adjudication. Such a certificate or bankbook was tendered the register of wills showing that the bank had credited the Register of Wills of Montgomery County with the same sum of $1,566.21 in payment of the transfer inheritance tax allowed on the said entire deposit. The register of wills refused to accept the bankbook on the ground that he was authorized only to accept transfer inheritance tax in United States money.

On January 22, 1941, the administrator filed his petition, in which he recited these and all other pertinent facts; and asked that the adjudication be amended to the effect that the inheritance tax on this fund should not have been levied as it had never been in the possession of the administrator. A citation was awarded directed to the register of wills to show cause why the adjudication should not be so amended. The register of wills filed an answer March 19, 1941, in

. which he admitted the record facts, denied knowledge of other facts recited in the petition and asked proof thereof, and justified the position of the register on the ground that he could not accept anything but the money of the United States of America in payment of transfer inheritance tax. He further denied that this petition could be granted because the proper procedure would have been by appeal from the appraisement.

We can easily dispose of the latter point raised. This is not a matter for appeal from the appraisement of this fund by the duly-constituted appraiser. The valuation by the appraiser is conceded, no deductions whatever are claimed against it that have not been allowed, and the accountant has done his best to make the payment in accordance with the award. The accountant having offered to make the payment by the only method available to him, and the register of wills having demanded of him to do something that is beyond his control or power to do, that is, to bring the cash from Italy and pay the register, the only question is whether the adjudication should be opened and the award to the register revoked and some other disposition made of the award to the register.

A hearing was had on the petition and answer January 29, 1943. At the hearing there was received in evidence the law of the Kingdom of Italy, dated May 1934, prohibiting the exportation of money of any kind out of Italy. The bankbook which was offered to the register of wills was also admitted in evidence. It is conceded by the testimony, and the statements and agreements of counsel on the record, that the transfer of the credit in the bank of the amount of inheritance tax in question from the decedent to that of the Register of Wills of Montgomery County was done without the knowledge or consent of the then register or any successor of his. It was also conceded that other creditors were paid in the same manner. This was all done in recognition of the decree of award in the adjudica-

tion of this court. Upon the various sums being awarded to the distributees, the bank of its own accord simply issued bankbooks to the distributees in the amounts of their respective awards. These books were forwarded to counsel for the accountant who distributed them to the distributees, all of whom accepted them except the Register of Wills of Montgomery County.

It must be borne in mind throughout the entire consideration of this problem that these sums in question on deposit in the bank in Italy never at any time came into the possession of the accountant-administrator, nor could they come into his possession by virtue of the law of Italy. It necessarily follows that, they never having come into his possession or control, his surety incurred no liability whatever with reference to this deposit. It is also plain that the accountant had no duty whatever to account for these funds, they having never come into his possession. The question might be fairly raised, therefore, why he did account for them.

It was drawn to the attention of the court, at the time of the filing of the account, that, under the law of Italy, the beneficiaries in Italy could not obtain their share of this deposit except upon the award of the Orphans' Court of Montgomery County, within whose jurisdiction the decedent had been domiciled at the time of his death and to which court the accountant was answerable in his accounts. For this reason, and for this reason only, it was necessary for the accountant to account for the funds in order to secure the award by this court of the said funds to the beneficiaries in Italy. At that time, Italy was not an enemy country of this country, and it was deemed by the court a proper act of comity to decree these shares to the respective distributees in accordance with the laws of descent of the Commonwealth of Pennsylvania.

Again, it should be carefully noted that the disposition of this fund, which has been refused in the form offered by the Register of Wills of Montgomery

County, is no subject for the consideration of the Alien Property Custodian. That official is concerned only with funds that are in this country and distributable to an enemy alien. Again we must repeat that this tax fund never was in this country nor in the possession of the administrator. The only and sole question remaining is as to what should be done with this tax fund.

The petitioner raises the question as to whether it was properly taxable in the first place. We are of the opinion that there may be some doubt as to its taxability, it never having been in this jurisdiction or in the possession of the administrator. However, we are so far beyond that question that we see no profit in considering it. We must concede that the register of wills was acting properly in refusing it, as it is clear that he has no authority to accept anything on account of tax other than money of the United States of America. On the other hand, the accountant is just as helpless as far as his legal position is concerned as is the register of wills. On account of forces that are beyond his control, which are no less powerful than the laws of a foreign country, he cannot possess himself of the funds. Not being able to possess himself of the funds and have them changed into United States money, it is perfectly plain that it is impossible for him to pay the tax in cash. No court ever holds a person responsible for doing something that is beyond his power to do. The only remaining action of the court, therefore, is plain. In fact, there is only one course that the court can take, and that is to revoke the award to the register of wills, who cannot receive it on the one hand, and the administrator, who cannot pay it to him on the other, and award it to the beneficiaries in Italy who are the only persons who can reduce it to possession, in the proportions to which they are entitled. This is the action that the court will take.

Alphonso Santangelo, Esq., counsel for the account-
ant, requested at the hearing an additional fee of $400,
payable out of this fund on deposit in the bank in Rome,
which is about to be awarded to the beneficiaries in
Italy in the same proportions that they are entitled
under the intestate laws, and in which proportions they
were awarded their share in the entire fund, by the ad-
judication. Mr. Santangelo requests this additional fee
not only for the additional work done with regard to
the litigation in regard to the award of the inheritance
tax, but also for services rendered in the administra-
tion of the estate in general. Upon consideration of the
fee which has already been received by Mr. Santangelo
and of the work done in the entire estate, we are of the
opinion that he should be awarded an additional fee of
$400 from the fund now under consideration.

And now, December 30, 1943, the adjudication con-
firmed nisi December 12, 1938, is opened, and the
award of $1,566.21 out of the funds on deposit in the
Casse di Risparmio Postali, Rome, Italy, to the Regis-
ter of Wills of Montgomery County is revoked, and the
bankbook in favor of the Register of Wills of Mont-
gomery County for that sum is directed to be returned
to said bank. Out of said fund of $1,566.21 on deposit
in said bank there is awarded to Alphonso Santangelo
$400 additional fee, and the balance is awarded to the
same persons, resident in Italy, beneficiaries under the
intestate laws of Pennsylvania, and in the same pro-
portions as shown in the said adjudication.

*Opinion sur exceptions*

HOLLAND, P. J., January 12, 1945.—On January 5,
1944, the Commonwealth of Pennsylvania filed six ex-
ceptions to the opinion and decree of this court under
date of December 30, 1943, opening the adjudication
confirmed nisi December 12, 1938, and amending the
said adjudication. The filing of these exceptions is not
strictly according to our rule of court, as this decree

was definitive and any objection thereto, it would seem, should have assumed the form of an appeal to the proper appellate court. However, we deemed it advantageous and expedient to hear the Commonwealth's objections in the nature of a reconsideration of our decree and opinion, and will, therefore, dispose of the exceptions. This procedure, however, is not to be regarded as a precedent.

The six exceptions may be considered together as they raise the following objections: (1) The adjudication should not have been opened; (2) the award to the Commonwealth of $1,566.21, the inheritance tax due on the fund on deposit in Italy, should not have been revoked; and (3) the court should not have, after revoking said award to the Commonwealth, made the distribution thereof that it did by its decree. The brief of the Commonwealth, in support of its exceptions, advances the following arguments: (1) If the administrator could not possess himself of the deposit in Italy because of the embargo laws against exportation from Italy, so that the award to the Commonwealth of its taxes could be made in cash, as required by the law of said Commonwealth, he should not have invoked the power of the court to distribute the fund to those admittedly entitled in Italy under the intestate laws of the Commonwealth, even though the laws of Italy required such a decree of distribution before it could be made to those recipients; and (2) by so invoking the power of this court to obtain the necessary decree of distribution to the distributees in Italy the administrator assumed the responsibility and incurred all the hardships incident thereto when he found that he could not obtain the money due the Commonwealth to pay it in cash.

The Commonwealth then proposes in its brief that the court should award the account standing in the bank back to the administrator for liquidation if, as, and when he finds it possible to obtain it, with direction to the administrator to pay the Commonwealth the

amount due it in United States money when he is able to obtain the liquidation of the fund. The brief of the exceptant Commonwealth is hereto attached so that its position may be upon the record.

It appears to us that our opinion of December 30, 1943, fully and adequately answers these arguments. As to the first argument, we pointed out therein that we regarded it as a proper act of comity toward a then friendly nation to enter the decree necessary and required by its law. It is conceded that the distributees to whom the money was awarded were entitled thereto under the intestate laws of Pennsylvania, and this act of comity extended by the sovereign Commonwealth of Pennsylvania through one of its courts to the Kingdom of Italy was a recognition only of the procedural requirements and the laws of that foreign sovereignty. Such comity between sovereignties has ample precedent to support it and is acted upon regularly by the courts of various sovereignties. If our conclusion as to this argument is correct, we see no force in the second argument that he voluntarily assumed the hardship of the embarrassment in which he afterward found himself in not being able to pay the tax due the Commonwealth in cash. The administrator in invoking the power of this court to obtain the distribution of the fund to the subjects of Italy was seeking no benefit to himself personally and, as we see it, was engaging in a bona fide attempt to have the money distributed to the persons who admittedly were entitled to it. We cannot see any point to his abandoning the funds and making no attempt to obtain their proper distribution simply because of the difficulties involved. On the contrary, it would appear that he was displaying at least the usual fidelity to his trust to do all in his power to secure the distribution to those entitled, including the Commonwealth. That he found it impossible to secure the payment of the amount due the Commonwealth in the only form in which it, under its own law, could accept by

reason of powers and forces beyond his control was no fault of his. We discussed this feature of the case at length in our opinion.

The proposal of the exceptant contained in its brief that the funds be awarded back to the administrator indefinitely for liquidation, in our opinion, condemns itself from the point of view of impracticability. Such a procedure would in effect constitute the administrator a trustee for an unpredictable period of time. No administrator should be inflicted with such an unreasonable burden. But aside from the impracticability of the suggestion, it is now rendered impossible because it must be remembered that the administrator was the Consul of Italy residing in the United States at the time of the grant of letters of administration, and since that time war has been declared between the Kingdom of Italy and the United States and he has long since been recalled. More recently the state of war between the two countries has ceased, but the chaotic conditions obtaining in Italy and the impossiblity of locating the administrator, to say nothing of his inability to return to this jurisdiction, makes the suggestion not only impracticable but impossible.

The situation with which the court is confronted is without precedent and the events that have transpired since the entry of this opinion and decree, supra, even more convince us of the soundness of our action taken. Furthermore, the entire question may now be academic as it is extremely speculative what the value of the fund now is or whether it exists at all after the hazards of the Fascist regime and the total prostration and disorganization of the unfortunate country where it originally was on deposit. We repeat that we deem our action proper and these exceptions will be dismissed.

In our opinion, supra, we stated:

"It must be borne in mind throughout the entire consideration of this problem that these sums in question

on deposit in the bank in Italy never at any time came into the possession of the accountant-administrator, nor could they come into his possession by virtue of the law of Italy. It necessarily follows that, they never having come into his possession or control, his surety incurred no liability whatever with reference to this deposit."

The surety, therefore, on the administrator's bond has for some time been in a position to request its discharge. The said surety may at any time present to the court a decree for its discharge which will be executed promptly by the court.

And now, January 12, 1945, these six exceptions of the Commonwealth of Pennsylvania are dismissed.